IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACUITY, a mutual insurance company, | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 7505 |
| | ) Judge Jorge Alonso |
| LENNY SZAREK, INC., MULBERRY GROVE LLC, CONCORD HOMES, INC., LENNAR CHICAGO, INC., CARY WOODS LLC, MULBERRY GROVE CONDOMINIUM ASSOCIATION, and THE BOARD OF DIRECTORS OF MULBERRY GROVE CONDOMINIUM ASSOCIATION, | ) |
| Defendants. | ) |
| LENNAR CHICAGO, INC. and CARY WOODS, LLC, | ) |
| Counter-Claimants, | ) |
| v. | ) |
| ACUITY, | ) |
| Counter-Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, plaintiff Acuity, an insurance company, seeks a declaration that certain commercial general liability ("CGL") insurance policies that Acuity issued to Lenny Szarek, Inc. ("Szarek") do not cover the underlying claims against defendants Szarek, Lennar Chicago, Inc. ("Lennar"), and Cary Woods LLC ("Cary"), which stem from the faulty construction of two condominium projects, the Mulberry Grove Condominium development and the Cary Woods Condominium development. Defendants Lennar and Cary have

1

counterclaimed, seeking a declaration that Acuity breached its duty to defend them. Acuity has filed a partial motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants Lennar and Szarek have filed a cross-motion for judgment on the pleadings regarding Acuity's duty to defend. For the reasons set forth below, Acuity's motion is granted, and Lennar and Szarek's motion is denied.

## BACKGROUND

Acuity issued Szarek, a carpentry contractor, a series of CGL insurance policies effective from 2002 to 2009. (3d Am. Compl. ¶ 41, ECF No. 51.) Beginning in 2001, Szarek agreed to perform carpentry work on both the Mulberry Grove and Cary Woods condominium projects. (*Id.* ¶¶ 20, 25, 34.) In approximately 2010, the condominium unit owners began to investigate apparent water infiltration issues, and the Mulberry Grove Condominium Association and the Cary Woods Condominium Association took action against the condominium developers and builders. (*Id.* ¶¶ 20, 29.) This case concerns whether Acuity's policies provide coverage for the damage allegedly caused by Szarek's work.

In the Mulberry Grove action, the Mulberry Grove Condominium Association and its board of directors ("the Mulberry Grove plaintiffs") filed suit against Mulberry Grove LLC—the developer of the Mulberry Grove Condominium—and its two members, Concord Homes, Inc. ("Concord") and Lennar.[1] (*Id.* ¶¶ 7, 16.) The Mulberry Grove plaintiffs later amended their complaint to add claims against various contractors, including Szarek. (*Id.* ¶¶ 17-19.) The complaint included allegations that Szarek's improper construction and installation of building materials resulted in water infiltration that "caused substantial damages to common elements, . . . drywall, garage walls and ceilings, and interior finishings of the units, as well as wood floors,

---

[1] Concord and Lennar later merged, leaving Lennar as the only surviving member. (3d Am. Compl. ¶¶ 7, 9.) Mulberry Grove LLC was subsequently dissolved (*id.* ¶ 7), and it was voluntarily dismissed from this action after the filing of the Third Amended Complaint. (Notice of Voluntary Dismissal, ECF No. 61.)

carpeting, window coverings and personal property, all located inside the affected unit." (*Id.* ¶¶ 20 (citing Mulberry Grove Compl. Count I ¶ 69, Count II ¶ 76, Count III ¶ 76, Count IV ¶ 41, Count V ¶ 38).)

In June 2014, Lennar filed a complaint against Szarek in state court ("the *Lennar* complaint"), contending that Szarek breached its subcontract by failing to defend Lennar in the Mulberry Grove plaintiffs' lawsuit. (3d Am. Compl. ¶¶ 39-40.)

In the Cary Woods underlying matter, the Cary Woods Condominium Association notified Cary Woods LLC, the developer of the condominium, and Lennar of water infiltration problems at the condominium and alleged that the problems were due to construction defects. In 2012, the Condominium Association submitted a request for mediation under the mandatory alternative dispute resolution process prescribed by its Declaration of Condominium Ownership for Cary Woods Condominium ("Declaration") for resolving disputes with the condominium developers and builders.[2] After the mediation concluded unsuccessfully in January 2014, the Condominium Association sought arbitration of its claim, again pursuant to the alternative dispute resolution process prescribed by the Declaration. (*Id.* ¶ 32.) Cary and Lennar filed a complaint ("the Cary/Lennar complaint") against Szarek and other contractors for breach of contract, indemnification and declaratory relief, contending that Szarek failed to provide work "free from defects in workmanship, materials and design," to procure insurance covering Cary and Lennar, and to defend Cary and Lennar from claims arising out of Szarek's defective work, as the subcontract between Szarek and Cary required. (3d Am. Compl. ¶ 34.)

---

[2] Under the Declaration, the alternative dispute resolution process is the *exclusive* means of resolving disputes between the Condominium Association and defendants Cary and Lennar concerning the construction of the condominium building. Such disputes expressly may not be adjudicated "by or in a court of law." (Cary/Lennar Am. Compl. ¶¶ 41-42, ECF No. 43-4.)

The Acuity policies issued to Szarek require Acuity to pay "those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies."[3] (3d Am. Compl. ¶ 42, section I.A.1.a.) The policies also confer on Acuity "the right and duty to defend the insured against any *suit* seeking those damages." (*Id.*) Further, the policies provide that "this insurance applies to bodily injury and property damage only if: (1) [t]he *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the coverage territory; [and] (2) [t]he *bodily injury* or *property damage* occurs during the policy period . . . ." (*Id.* ¶ 42, section I.A.1.b.) The policies define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "property damage" as "[a.] physical injury to tangible property, including all resulting loss of use of that property . . . ; or [b.] loss of use of tangible property that is not physically injured." (*Id.* ¶ 46, sections 13, 17.)

The policies contain an additional insured endorsement that provides that they insure not only Szarek but also "any person or organization for whom you [Szarek] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as additional insured on your policy." (*Id.* ¶¶ 49-53.) Szarek's subcontracts with Mulberry Grove LLC and Cary contained provisions requiring Szarek to obtain insurance covering them as additional insureds. (*Id.* ¶¶ 25, 37-38.)

Acuity seeks a declaration that it has no duty to defend or indemnify Szarek against the Mulberry Grove complaint (Count I), the Cary/Lennar complaint (Count II), or the *Lennar* complaint (Count VII); it has no duty to defend or indemnify Mulberry (Count III), Concord or Lennar (Count IV) against the Mulberry Grove complaint as additional insureds; it has no duty to defend or indemnify Cary (Count V) or Lennar (Count VI) against the Cary Woods mediation as

---

[3] The policies italicize words for which they provide a specific definition.

additional insureds; and it has no duty to defend or indemnify Cary against the Cary Woods arbitration as an additional insured (Count VIII). Lennar and Cary have filed counterclaims that amount to mirror images of Acuity's claims. (ECF No. 53.) Acuity has filed a motion for judgment on the pleadings (ECF No. 57), although it notes that Acuity, Lennar and Cary have agreed to "hold . . . in abeyance" Acuity's claims in Counts V, VI and VIII, as well as Counts I and II of Cary's amended counterclaim, due to the settlement of the Cary Woods claim during the pendency of this case. (Mem. Supp. Acuity's 12(c) Mot. at 2-3, ECF No. 58.) Lennar and Szarek have filed a cross-motion for judgment on the pleadings as to Acuity's duty to defend. (ECF No. 59.)

## ANALYSIS

I.         **LEGAL STANDARDS**

Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## II. DUTY TO DEFEND

The Court first considers whether Acuity had a duty to defend Szarek or any additional insured under the basic coverage provisions of the policy in the Mulberry Grove action. The duty to defend arises when the underlying complaint makes allegations that "fall within or potentially within the coverage provisions of the policy." *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (Ill. App. Ct. 2005) (citing *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 722 (Ill. App. Ct. 2004)).[4] The underlying complaint is to be "liberally construed in favor of the insured, and doubts and ambiguities are to be construed in favor of the insured." *Lyons*, 811 N.E.2d at 722. Because an insurer has a duty to defend if an underlying complaint makes allegations against an insured that are even *potentially* covered, the duty to

---

[4] The parties do not dispute that Illinois law applies. *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits.").

defend is broader than the duty to indemnify; if there is no duty to defend, it follows that there is no duty to indemnify. *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012).

Acuity had a duty to defend Szarek and any additional insureds in the underlying case only if the underlying claims could be construed, resolving any doubts and ambiguities in favor of coverage, to allege an injury that fits the definition of "property damage" caused by an "occurrence." Under Illinois law, it is well-established that a construction defect is not an "occurrence" or "accident"; rather, it is the natural and ordinary consequence of poor workmanship. *See Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 689-90 (7th Cir. 2008) (citing cases). CGL policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 503 (2001) (citing *Qualls v. Country Mut. Ins. Co.*, 462 N.E.2d 1288, 1291 (Ill. App. Ct. 1984)).

Illinois courts hold that "there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work," *Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 531 (Ill. App. Ct. 2011) (citing *Viking Constr.*, 831 N.E. 2d at 6), but when the defective workmanship results in damage to something *other* than the construction project itself, there may be an occurrence, *id.* (citing *CMK Dev. Corp. v. W. Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1164-65 (Ill. App. Ct. 2009), and *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 653 (Ill. App. Ct. 2008). Thus, where faulty workmanship results in cracks in the load-bearing elements of a home, there is no occurrence causing covered property damage, *Stoneridge*, 888 N.E.2d at 654, but where faulty workmanship results in leaks that cause water

7

damage to the homeowner's furniture, clothing and antiques, there *is* an occurrence causing covered property damage, *see Pekin Ins. Co. v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 365-66 (Ill. App. Ct. 1997).

### A. Damage to Personal Property

Defendants contend that this case is virtually identical to *Richard Marker* because the underlying claim is that faulty workmanship resulted in leaks that damaged not only the common elements of the Mulberry Grove Condominium (*i.e.*, the construction project) but also the individual units and the individual unit owners' private property. Acuity, however, identifies a critical difference: in *Richard Marker*, the underlying claimant was a homeowner who owned both the home that allegedly suffered from a construction defect as well as the personal property within the home that was damaged by the water infiltration.

In this case, Acuity argues, the underlying claimant is the condominium association, which may "own" the common elements of the building but does not own the personal property within the individual units or the units themselves. The individual unit owners apparently did not join the condominium association in asserting the underlying claims against the defendants, and the condominium association has asserted no right to act on behalf of the individual unit owners with respect to any damages to their personal property. Rather, the condominium association brings suit only "in its representative capacity . . . concerning the construction deficiencies in the common elements," and the prayers for relief are limited to the "cost of repair or replacement of the . . . defects," including fees to "investigate and repair the . . . defective conditions" and interest on "loans taken for repair of the defects." (Mulberry Grove Compl. ¶¶ 34, 36, 40, ECF No. 43-1.) Thus, Acuity contends, the underlying claim is not even potentially

covered because, unlike in *Richard Marker*, the underlying claimant is not seeking any relief with respect to the potentially covered damages to personal property, nor could it.

Defendants reply that this is a distinction without a difference because, as a general matter, the duty to defend is determined from the facts alleged in the underlying case, the underlying allegations are construed broadly, and the allegation in this case that water infiltration damaged personal property separate from the construction project is enough, regardless of whose property it may turn out to be, to bring this case at least potentially within the policies' coverage provisions.

The Court disagrees. Defendants are correct that the duty to defend is determined from the facts of the underlying matter, and, in many circumstances, a CGL policy may cover damage to personal property due to water infiltration resulting from defective work; however, as Acuity explains, the facts in an underlying matter only establish a duty to defend to the extent they "point to a theory of recovery" that is potentially covered—that is, a theory by which the underlying claimant may be entitled to relief against the insured, based on facts that fall within coverage. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991) ("[A]n insurer has a duty to defend its insured if *any **theory of recovery** alleges potential coverage.*") (second emphasis added)); *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 614-15 (7th Cir. 2010) (citing *Momence Meadows*); *see also ISMIE Mut. Ins. Co. v. Michaelis Jackson & Assoc., Inc.*, 921 N.E.2d 1156, 1164 (Ill. App. Ct. 2009) (involving medical malpractice policy).

If the facts do not point to a valid theory by which the underlying claimant is entitled to recover from the insured for a covered injury, the facts would not "potentially" bring the case within coverage, as the Illinois Appellate Court has explained:

> "Potentially covered means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy." *Western Casualty & Surety Co. v. Adams County,* 534 N.E.2d 1066, 1068 (Ill. App. Ct. 1989). . . . It is not sufficient that the facts alleged could have been framed in a different proceeding to cover a cause of action which would fall within the policy. Rather, it must be demonstrated that the facts alleged were sufficient to permit recovery for the potentially covered cause of action in the same proceeding in which the action was initiated for the relief that did not in and of itself fall within the covered risks of the policy.

*William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669, 676 (Ill. App. Ct. 2000); *see also Del Monte Fresh Produce, N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 646 (7th Cir. 2007) ("[I]t is the actual complaint, not some hypothetical version, that must be considered.") (citing *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 350-51 (7th Cir. 2003)); *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811-12 (7th Cir. 2010) ("Implied claims that are not specifically alleged can be ignored.").

In this case, if the condominium association wins its lawsuit, it will recover only for the damage to the common elements; the Court is unaware of any right the condominium association has to recover from defendants for damage to personal property of individual unit owners who are not parties to the underlying action, nor has the condominium association asserted any such right or intention. The only judgment that could issue would be for property damage to the condominium building itself, which *is not* covered—and if there is not even potentially a duty to indemnify, there is no duty to defend. *See* Allen D. Windt, 1 Insurance Claims and Disputes § 4:16 (6th ed.) ("The obligation to defend is limited by, and coextensive with, the existence of a potential obligation to pay.") Defendants have not even suggested how the mere fact that the

condominium association has mentioned damage to the personal property of parties who have not taken action against defendants, and on whose behalf the condominium association does not and cannot assert any claim for personal property damage, might transform the judgment they seek into one for covered property damages. If any judgment that might issue could only award damages for property damage that is not covered by the Acuity policies, then there is no duty to defend.

### B. *J.P. Larsen*

Defendants urge this Court to follow *J.P. Larsen*, 956 N.E.2d at 530-32, in which the Illinois Appellate Court held, in a similar factual context, that an insurer had a duty to defend a subcontractor because the condominium association's underlying complaint mentioned water damage to the personal property of the individual unit owners. In *J.P. Larsen*, the court did not address the fact that, as in this case, the individual unit owners did not join the condominium association in bringing the underlying action.

This Court cannot speculate to why *J.P. Larsen* was silent on this point, unless the reason is that the insurer simply never raised the issue and the trial and appellate courts overlooked it. In any case, Acuity correctly points out that this Court is not bound by a decision of a state's intermediate appellate court, even on a question of state law, if the state's supreme court would reach a different decision. *Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 363 (7th Cir. 1994) ("We will not follow an Illinois Appellate Court's interpretation of state law if we are convinced that the Illinois Supreme Court would decide the issue differently.") The Illinois Supreme Court would be unlikely to concur with *J.P. Larsen* in light of a wealth of authority interpreting Illinois law to impose no duty to defend where the underlying facts might potentially bring the claim within coverage in some hypothetical version of the proceeding, but not the

underlying proceeding as actually instituted. *Momence Meadows*, 566 F.3d at 696 (citing *Wilkin*, 578 N.E.2d at 932); *see Lagestee-Mulder*, 682 F.3d at 1059, *Avent*, 612 F.3d at 614-15, *Rock v. State Farm Fire & Cas. Co.*, 917 N.E.2d 610, 614-15 (Ill. App. Ct. 2009) *petition for leave to appeal denied* 924 N.E.2d 460 (Ill. 2010); *Templeman*, 735 N.E.2d at 676, *Crawford Labs., Inc. v. St. Paul Ins. Co. of Ill.*, 715 N.E.2d 653, 658 (Ill. App. Ct. 1999), *petition for leave to appeal denied,* 720 N.E.2d 1090 (Ill. 1999); *Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083, 1087-88 (Ill. App. Ct. 1993); *Bituminous Cas. Corp. v. Gust K. Newberg Const. Co.*, 578 N.E.2d 1003, 1008 (Ill. App. Ct. 1991), *petition for leave to appeal denied,* 587 N.E.2d 1011 (Ill. 1992).

**C. Illinois Condominium Property Act**

Defendants argue that the Illinois Condominium Property Act allows a condominium association to "act in a representative capacity in relation to matters involving the common elements ***or more than one unit***, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (emphasis added). Defendants cite no authority to support any conclusion that this statute gives a condominium association the right to sue for property damage suffered by individual unit owners; the statute by its plain language alone certainly does not establish any such right. The only case either party has cited bearing on the issue, *Poulet v. H.F.O., L.L.C.*, 817 N.E.2d 1054, 1064-65 (Ill. App. Ct. 2004), tends to suggest that it remains for an individual unit owner to bring any claim he may have for damage to his own personal property.

For purposes of the present action, however, there is no need to determine precisely what right a condominium association may have to act on behalf of the individual unit owners. In the underlying action, the condominium association merely mentions damage to the personal property of the individual unit owners; it does not seek to recover for it. An underlying claim

does not give rise to a duty to defend merely because it does not "logically foreclose the theoretical possibility" of a potentially covered claim lying somewhere in the underlying facts. *Microplastics*, 622 F.3d at 811-12 (citing *Del Monte*, 500 F.3d at 644). The condominium association has not asserted any claim against defendants for the personal property within the individual units, nor does it contend in the underlying action that it has any right to do so.

### D. Scope of Insured's Work and "Interior Finishings"

Defendants argue that, while the Acuity policies exclude damage to the insured's own work,[5] the named insured, Szarek, was a subcontractor whose work was so narrow in scope as to make up only a small portion of the construction project as a whole, and the alleged water infiltration damaged parts of the condominium building on which Szarek did not work. As such, defendants argue, the cases holding that damage to an insured's own work is not covered property damage do not apply here.

This argument is unavailing. Damage to a structure that results from its defective construction is not "unforeseen" or an "accident"; it is the natural consequence of faulty workmanship. *See, e.g., Am. Fire & Cas. Co. v. Broeren Russo Const., Inc.*, 54 F. Supp. 2d 842, 847-48 (C.D. Ill. 1999). Thus, as numerous courts interpreting Illinois law have explained in this context, property damage due to construction defects is not caused by an "occurrence" within the meaning of a CGL policy, regardless of whether the insured contractor is responsible for all or just a portion of the building project. *CMK*, 917 N.E.2d at 1164-65, *Stoneridge*, 888 N.E.2d at 656 (citing *Viking Constr.*, 831 N.E.2d at 6-7, and *Monticello Ins. Co. v. Wil-Freds Const., Inc.*, 661 N.E.2d 451, 456-57 (Ill. App. Ct. 1996)); *see also Hartford Cas. Ins. Co. v. Constr. Builders*

---

[5] Not only is such damage excluded according to the principle, described above, that it is not caused by an "occurrence," but it is also expressly excluded by the Acuity polices in exclusions b., j.(5) & (6), k., l., m., and n. (3d Am. Compl. ¶ 45.)

13

*in Motion, Inc.*, 966 F. Supp. 2d 777, 790 (N.D. Ill. 2013), *Hartford Fire Ins. Co. v. Flex Membrane Int'l, Inc.*, No. 00 C 5765, 2001 WL 869623, at *2 (N.D. Ill. Aug. 1, 2001).

Defendants also argue that the underlying complaint alleges that the water infiltration damaged the "interior finishings" of the individual units, which are not among the common elements of the building. These allegations do not bring the claim potentially within coverage, for reasons already stated. First, if the "interior finishings" are not common elements, then any allegations of damage to them, as with allegations of damage to personal property, do not point to a possible "theory of recovery" on an underlying claim brought not by the individual unit owners but by the condominium association. Second, even putting aside the fact that the condominium association is not seeking and cannot seek to recover for damage to elements of the individual units, the interior finishings are part of the construction project, so any damage to them due to faulty workmanship is not "property damage" caused by an "occurrence" or "accident"; it is the natural consequence of faulty workmanship. *See CMK*, 917 N.E.2d at 1166-67.

This Court concludes that the underlying Mulberry Grove complaint does not allege "property damage" caused by an "occurrence" within the meaning of the relevant Acuity policies. Because there is not even the potential for coverage based on the allegations in the underlying proceedings, Acuity had no duty to defend. The Court need not address the parties' arguments, raised in the briefing on Lennar and Szarek's motion (ECF No. 60, 64, 70), concerning whether Lennar was covered as an additional insured under the Acuity policies because Acuity has no duty to defend under the general coverage provisions of the policy.

## III. BREACH OF CONTRACT AND INDEMNITY CLAIMS

Acuity contends that it has no duty to defend or indemnify Szarek for the breach of contract and indemnity claims Cary and Lennar have brought against Szarek in the Cary/Lennar

14

complaint and the *Lennar* complaint. According to Acuity, these claims are based on Szarek's obligations under its subcontracts with Cary and Mulberry,[6] which require Szarek to indemnify the developers for claims "arising out of or in connection with . . . [a]ny act, omission, neglect or misconduct of Contractor [Szarek] or any employee or agent of Contractor in connection with the Work or performance of any covenant, term or provision of the Contract Documents . . . ." (*Id.* ¶¶ 26, section A.1.; 36, section A.1.).

The Acuity policies exclude coverage for "*[b]odily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (3d Am. Compl. ¶ 42, section IV.3.b.)

**A. Breach of Contract Claims**

Acuity contends that, based on the contractual liability exclusion, its policies do not cover the developers' claims that Szarek breached its contracts with them by failing to construct the buildings in a workmanlike fashion or to procure insurance coverage. Szarek wisely makes no response to this contention, as it is abundantly clear that Cary and Lennar's claims concerning Szarek's failure to construct the buildings in a workmanlike fashion or to procure insurance coverage fall within the contractual liability exclusion. *See Viking Constr.*, 831 N.E.2d at 8-10 (citing *Ind. Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 72-73 (Ill. App. Ct. 1993) (general contractor's breach of contract claim against subcontractor for failure to provide workmanlike construction not covered)); *Hankins v. Pekin Ins. Co.*, 713 N.E.2d 1244, 1249 (Ill. App. Ct. 1999) (no coverage for breach of contract claims for failure to procure insurance coverage).

---

[6] Acuity correctly states in its brief that it is "not clear . . . upon what basis Lennar claims to be an indemnitee [with respect to the Cary Woods matter], but the same analysis would apply to it, in any event." (Mem. Supp. Acuity's 12(c) Mot. at 13 n.7, ECF No. 58.)

**B. Indemnity Claims**

Acuity contends that it has no duty to defend or indemnify Szarek for the indemnity claims Cary and Lennar have brought against Szarek in the Cary/Lennar complaint and the *Lennar* complaint. The contractual liability exclusion in the Acuity policies does not apply "to liability for damages: (1) [a]ssumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement; or (2) [t]hat the insured would have in the absence of the contract or agreement." (3d Am. Compl. ¶ 42, section IV.3.b.) An "insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization **provided the bodily injury or property damage is caused in whole or in part, by you or by those acting on your behalf**." (*Id.* ¶ 46, section 9.f. (bold emphasis added).) The Acuity policies effective between May 23, 2002 and May 23, 2005 did not include the proviso bolded above. (3d Am. Compl. ¶ 46 n.2.)

Acuity argues that the subcontracts do not meet the definition of "insured contract" because, in the relevant portions of the subcontracts, Szarek promised to indemnify the developers for liability they incurred due to Szarek's acts or omissions, but "insured contracts" are only those in which a named insured promises to assume the tort liability another party has incurred for the other party's own acts or omissions. Acuity cites *Virginia Surety Co. v. Northern Insurance Co. of New York*, 866 N.E.2d 149, 158-59 (Ill. 2007) in support of its interpretation of the term. But *Virginia Surety* interpreted only a definition of "insured contract" similar to the one used in the policies effective between 2002 and 2005, and Acuity fails to acknowledge the fact that the definition used in the post-2005 policies differs. In its discussion

16

of this issue, Acuity does not address whether coverage under its post-2005 policies may be triggered if there is any covered property damage, but elsewhere in the present briefing it appears to admit that it may be. (*See* Acuity's Resp. to Lennar/Szarek Mot. J. Pleadings, ECF No. 64, at 12.)

The Court has been unable to locate any case applying Illinois law that interpreted the definition of "insured contract" found in the post-2005 policies, but it would seem that the proviso (not found in the older policies) might bring Szarek's subcontracts within the definition of "insured contract," if there are any allegations of potentially covered property damage. *See, e.g., Leaf River Cellulose, LLC v. Mid-Continent Cas. Co.*, No. 2:11-CV-54-KS-MTP, 2012 WL 1906529, at *7-8 (S.D. Miss. May 25, 2012) (finding that, under a definition of "insured contract" similar to that in the post-2005 Acuity policies, an indemnification agreement was an "insured contract").

Szarek, however, does not attempt to exploit this weakness in Acuity's argument. Rather, it contends that the state court in the Cary/Lennar action characterized the indemnity claims in that case as "contribution claims sounding in negligence and not indemnification claims sounding in breach of contract," and therefore the contractual liability exclusion does not apply. (Szarek Resp. at 2, ECF No. 63 (citing Cary/Lennar Order (Mar. 11, 2014), ECF No. 63-1).) Szarek does not address the *Lennar* complaint, apparently conceding that the claims in the *Lennar* complaint fall within the contractual liability exclusion.

Szarek mischaracterizes the Cary/Lennar court's ruling. The court construed the claims against Szarek as "claims for contribution," but it does not follow that the claims therefore "sound in negligence." Contribution is an equitable concept that may be applied to contract liability as well as tort liability, and it is frequently so employed in insurance coverage matters.

*See Liberty Mut. Ins. Co. v. Lumbermens Mut. Cas. Co.*, 525 F. Supp. 2d 993, 995-96 (N.D. Ill. 2007). Szarek cites no authority to the contrary—indeed, it cites no authority at all. The Court is not persuaded that the Cary/Lennar indemnification claims are negligence claims rather than breach of contract claims. On the contrary, they are clearly rooted in Szarek's subcontracts.

Nevertheless, the Court need not determine whether Szarek's subcontracts are "insured contracts" within the definition of the policy, even though they only require Szarek to indemnify the developers for damages caused by Szarek's own acts or omissions. There is no need to resort to interpreting exclusions and their exceptions if there is no coverage to begin with, and the underlying claimants do not allege "property damage" caused by an "occurrence" that the policy potentially covers.[7]

The Court has already explained its reasons for concluding that the Mulberry Grove underlying complaint, on which the *Lennar* complaint is based, does not allege any property damage caused by an "occurrence." As in the Mulberry Grove action, the Cary Woods action[8] does not involve any individual unit owners who might have a right to bring a claim for covered individual property damages against defendants; the condominium association is the only party to have taken action against defendants. Further, as in the Mulberry Grove action, the only allegations that have been made, in either the Cary/Lennar complaint or the underlying

---

[7] Even if it were necessary to reach the issue of whether the subcontracts are "insured contracts," "insured contracts" are only those in which the insured party agrees to assume tort liability for covered "property damage," but again, the underlying claimants allege no damage caused by an "occurrence" and therefore no covered "property damage."

[8] The parties do not address whether the Cary Woods underlying action, which consists of an alternative dispute resolution process mandated by contract, not a formal civil action in a court of law, is a "suit" that triggers Acuity's defense obligation. The policies' definition of "suit" includes arbitration proceedings "to which the insured must submit or does submit with [Acuity's] consent" or other alternative dispute resolution proceedings "to which the insured submits with [Acuity's] consent." (3d Am. Compl. ¶ 46, section 18.) The Court assumes for purposes of the present motions that Acuity has consented or the mandatory alternative dispute resolution process prescribed by the Declaration is the "functional equivalent of a suit" and would trigger the duty to defend if any potentially covered property damage were alleged. *See Lapham-Hickey Steel Corp. v. Nat'l Sur. Corp.*, 633 N.E.2d 199, 201 (Ill. App. Ct. 1994) (citing *Madawick Contracting Co. v. Travelers Ins. Co.*, 120 N.E.2d 520, 523-24 (N.Y. 1954) (arbitration proceedings between general contractor and subcontractor may trigger duty to defend)).

alternative dispute resolution process between the Cary Woods Condominium Association and defendants Cary and Lennar, are allegations of defects in the construction of the condominium building, which, as explained above, are not covered "property damage" caused by an "occurrence."

The underlying claims do not even potentially allege "property damage" caused by an "occurrence" within the meaning of the Acuity policies. Acuity has no duty to defend or indemnify Szarek against the breach of contract and indemnity claims.

IV.     **IMPROPER HOME REPAIR AND REMODELING COVERAGE**

Acuity argues that, although the policies at issue provide specialized coverage for Improper Home Repair and Remodeling, this coverage does not apply in this case because it applies only to "residences", which are defined as "dwelling[s] containing 6 or fewer apartments, condominiums, town houses or dwelling units," and it applies only to the "fixing, replacing, altering, converting, modernizing, improving or making of an addition to . . . real property . . . ," not "[n]ew original construction." (3d Am. Compl. ¶ 47.) Acuity contends that the condominium buildings are too large to fit the definition of "residence," and the work at issue here was new construction, not fixing or improving. Defendants do not respond to this argument. The Court deems defendants, by their silence, to have either conceded that there is no improper home repair/remodeling coverage or abandoned any claim to it. *See Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *11 (N.D. Ill. June 12, 2014).

## **CONCLUSION**

For the reasons set forth above, the Court grants Acuity's motion for partial judgment on the pleadings [57] and denies Lennar and Szarek's motion for judgment on the pleadings [59]. Status hearing set for 10/7/15 at 9:30 a.m.

**SO ORDERED.**

ENTERED: September 2, 2015

_____
**HON. JORGE ALONSO
United States District Judge**